**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAYNE GAYLE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-1690** |
| | : | |
| **CITY OF EASTON,** *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**SCHMEHL, J. -** */s/ JLS*                                                    **JUNE 30, 2026**

Currently before the Court is Plaintiff Wayne Gayle's Second Amended Complaint

("SAC"), challenging the constitutionality of a traffic stop and his subsequent prosecution in the

Northampton County Court of Common Pleas.[1]  (ECF No. 12.)  For the following reasons, the

Court will grant Gayle leave to proceed *in forma pauperis* and dismiss his Complaint.

I.      **FACTUAL ALLEGATIONS**[2]

Gayle's SAC is lengthy and repetitive.  In sum, Gayle alleges that the City of Easton, its

police department and officers; the state court, its Judges and director of administration; and the

District Attorney's Office and its prosecutors, violated his civil rights in connection with a

---

[1] In a prior order, the Court granted Gayle leave to proceed *in forma pauperis* and directed him to file one comprehensive pleading.  (ECF No. 11.)  Gayle responded by filing the pending SAC, which is now the governing pleading in this matter.  *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)).

[2] The factual allegations are taken from the SAC.  The Court adopts the sequential pagination provided by the CM/ECF docketing system.

vehicle stop and his subsequent arrest and prosecution.[3]

On April 12, 2024, Defendant Police Officer Aaron Kinnel of the Easton Police Department pulled over the vehicle in which Gayle was a passenger because of "an invalid plate on the vehicle." (SAC at 1, 5-6.)  Gayle claims the vehicle belonged to his company, Blest Dreams Inc.  (*Id.* at 7.)  Defendant Officers Rivera and McNally arrived on the scene shortly after the stop, after which Gayle was "forced from the vehicle's front passenger seat completely against [his] authority."  (*Id.* at 1, 5.)  The officers handcuffed him and searched him.  (*Id.* at 1, 6.)  During the search, Officer Kinnel removed $230 from the left front pocket of Gayle's pants, which Gayle claims was never returned to him.  (*Id.* at 1-2, 6.)

Gayle, still in handcuffs, was placed in a police vehicle while the officers searched the stopped vehicle "for over thirty minutes."  (*Id.* at 2, 7.)  During the search, they retrieved "company funds" from the glovebox, and "a priceless authentic, original creation and artifact, in the production of a mascot's head" for one of Gayle's companies from the trunk.  (*Id.* at 2, 7.)  The car was impounded because of the invalid license plate and "towed off."  (*Id.* at 2, 7.)  Gayle was then released, although he was not given his items.  (*Id.* at 2.)  He alleges that he did not break the law and was not given a citation.  (*Id.*)  The operator of the vehicle called the impound lot the next day and was told that the car was not there.  (*Id.*)  They were told the vehicle "had been picked up" but were not able to obtain any information about who picked it up or its

---

[3] The SAC names the following Defendants:  (1) City of Easton; (2) Easton Police Department; (3) Court of Common Pleas; (4) "court administration"; (5) District Attorney Office; (6) Officer Aaron Kinnel; (7) Police Officer Rivera; (8) Officer McNally; (9) Officer Campbell; (10) Chief of Police Carl Scalzo; (11) Deputy DA William Blake; (12) Chief DA Stephen Baratta; (13) Chief Court administrator J. Jermaine Green Sr.; (14) Judge Michael Koury; (15) President Judge Craig A Dally; (16) Judge Abraham Kassis; and (17) Magisterial District Judge Richard Yetter.

whereabouts.  (*Id.* at 68.)

Shortly thereafter, Gayle was planning to visit the local courthouse to attend proceedings involving a family member.  (*Id.* at 3.)  Due to prior experiences with local law enforcement, he called the Easton Police Department in advance of his visit to ensure that he did not have active warrants against him.  (*Id.* at 3-4.)  Gayle was transferred to the Chief of Police, Carl Scalzo, who when asked if Gayle had any "active warrants" responded "not yet," which Gayle claims "instantly traumatized" him.  (*Id.* at 4 (cleaned up).)

In the six days following the arrest, Defendant Sergeant Campbell of the Easton Police Department made unspecified "statements" to Officer Kinnel that caused Kinnel "to pursue an arrest warrant" for Gayle for charges that Gayle does not describe.  (*Id.* at 8.)  Gayle alleges that Defendant Magisterial District Judge Yetter "issued a fabricated, frivolous arrest warrant" for him based on the Officers' "statements."  (*Id.* at 8, 29, 75.)  The Northampton County District Attorney's Office then "practiced malicious prosecution" by pursuing the unspecified criminal charges against Gayle for twenty-one months "until [he] rouse [sic] victorious at [his] trial date."[4]  (*Id.* at 46.)  Gayle claims that the judges assigned to his case also violated his rights by, among other things, refusing to address his motions and complaints, including his concern that the criminal docket did not reflect appearances for all the attorneys he hired.  (*See* SAC at 48-52, 75, 81-112.)  Gayle claims that the City of Easton failed to properly train and/or supervise its law enforcement "and the judicial branch of the city" in light of the alleged constitutional violations

---

[4] Gayle alleges that he hired numerous attorneys whom he claims were ineffective.  He sued those attorneys in a separate lawsuit, which this Court dismissed.  *See Gayle v. Young, Marr, Mallis & Assocs. Law Firm*, No. 26-2182 (E.D. Pa.) (ECF Nos. 7 & 8).  The Court also dismissed a case Gayle filed on behalf of his company, noting that he could not pursue claims on the company's behalf and that, to the extent he was pursuing his own claims, he had already filed the instant lawsuit.  *See Blest Dreams, Inc. v. City of Easton*, No. 26-1708 (E.D. Pa.) (ECF Nos. 7 & 8).

3

he claims to have suffered beginning with the vehicle stop through his prosecution. (*Id.* at 5; *see also id.* at 8, 29.)

Based on these allegations, Gayle brings assorted constitutional claims, primarily under the Fourth Amendment, (*see, e.g.*, SAC at 9, 23-28, 32-34),[5] based on his April 12, 2024 stop, the seizure of his company car and the other searches and seizures that occurred that day, as well as his subsequent arrest and prosecution, *see Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." (footnote omitted)); *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (explaining that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment[] . . . must be the guide for analyzing these claims" (internal quotations omitted)). The Court also understands Gayle to be pursuing a related state claim for malicious prosecution. (SAC at 9.) He claims assorted injuries, including

---

[5] Gayle also purports to bring claims under the First, Fifth, Eighth, and Ninth Amendments, (*See, e.g.*, SAC at 9, 23-28), but he does not allege any facts that would support claims under these wholly inapplicable provisions. Accordingly, any claims based on these amendments will be dismissed. Additionally, "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution," so Gayle's claims under the Pennsylvania constitution will also be dismissed. *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*) (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.4 (3d Cir. 2008)). Further, to the extent he alludes to a "breach of contract," he alleges no contract, and nothing about the facts alleged suggests a legitimate basis for a breach of contract claim. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) ("It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."). And to the extent he claims "fraud," he does not allege facts supporting an inference that *he* was defrauded.

the loss of his business, and seeks damages.[6]  (*Id.* at 114-33.)

## II.    STANDARD OF REVIEW

Since Gayle is proceeding *in forma pauperis*, his case is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the SAC if, among other things, it is frivolous or fails to state a claim.  A complaint is subject to dismissal under § 1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  It is legally baseless if "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d

---

[6] To the extent Gayle seeks assorted injunctive relief that would restructure the systems he alleges harmed him and that would terminate the individual Defendants from their positions, he does not have standing to pursue such relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (standing to pursue injunctive relief depends on whether plaintiff is "likely to suffer future injury"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of possible future injury are not sufficient to satisfy Article III." (internal quotation marks omitted)).  In any event, the Court cannot direct the Defendants' termination from employment. *Buskirk v. Pa. Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *2 n.4 (E.D. Pa. Sept. 28, 2022) (stating "the Court has no authority to terminate the employment of a state employee").

Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Gayle is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.* (quoting *Mala*, 704 F.3d at 245).  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it by name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Gayle relies upon 42 U.S.C. § 1983 as the primary basis for his Complaint.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Even liberally construing Gayle's allegations as this Court must, he has not alleged a plausible basis for a claim against any of the Defendants.

### A.    Claims Against the Courts

States are not considered "persons" who may be liable under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  The Court of Common Pleas and any divisions within it are arms of the Commonwealth that share in the Commonwealth's Eleventh Amendment immunity and may not be sued as "persons" under § 1983.  *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (state courts in Pennsylvania share in the Commonwealth's Eleventh Amendment immunity); *see also Smith v. Delaware*, 624 F. App'x 788, 791 (3d Cir. 2015) (*per curiam*) (concluding that district court correctly dismissed complaint as frivolous, including on Eleventh Amendment grounds); *Burford v. Delaware County*, No. 19-0577, 2019 WL 7048796, at *4 (E.D. Pa. Dec. 20, 2019) ("The Prothonotary's Office (and thus the Prothonotary in her official capacity) is part of the Delaware County Court of Common Pleas (*i.e.*, a part of the judicial system and therefore an 'arm of the state') and is not a 'person' under 42 U.S.C. § 1983.").  Accordingly, the Court will dismiss Gayle's claims against the Court of Common Pleas and "Court Administration" as legally baseless.

### B.  Claims Against Judges

Gayle also sued several judges based on how they handled his criminal case.  Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function

normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Judicial immunity also precludes tort claims under Pennsylvania law based on a judge's exercise of judicial authority over a matter in which he has jurisdiction. *See Chasan v. Platt*, 244 A.3d 73, 83 (Pa. Commw. Ct. 2020); *see also Langella v. Cercone*, 34 A.3d 835, 838 (Pa. Super. Ct. 2011).

Since Gayle's claims against Judges Kassis, Koury, and Yetter arise from decisions and rulings made in their judicial capacity in handling Gayle's criminal case, (*see* SAC at 48-52, 75, 81-112), these claims are barred by absolute judicial immunity. It is unclear whether President Judge Dally presided over Gayle's criminal proceedings; rather, it seems he may be sued in his official capacity as the "President Judge." *See Downey v. Pa. Dep' t of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity). In that case, the claims against him are baseless because they are, in essence, claims against the Commonwealth that may not proceed for the reasons discussed above. *Id.*

### C. Claims Against Officers

Gayle brings numerous Fourth Amendment claims against Officers of the Easton Police Department—Officers Kinnel, Rivera, McNally, and Campbell—and Chief Scalzo. He

challenges events related to the stop of and impoundment of his company vehicle, and the related searches that occurred on April 12, 2024, as well as his subsequent prosecution.

### 1.  April 12, 2024 Events

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  It is well-settled that the temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  However, traffic stops may be initiated based on a reasonable suspicion that a traffic violation has occurred.  *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018) (citing *Navarette v. California*, 572 U.S. 393 (2014); *United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006).  Moreover, where police have directly witnessed a traffic violation, a traffic stop is a reasonable seizure under the Fourth Amendment.  *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations.").

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' — to address the traffic violation that warranted the stop, and attend to related safety concerns."  *Id.* (internal citations omitted).  "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  *Id.* at 355; *see also* 75 Pa. Cons. Stat. § 6308(b).  "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly."  *Rodriguez*, 575 U.S. at 355.  The length of any

additional investigation and detention after a traffic stop must be supported by reasonable suspicion based on the facts and circumstances confronting the officer. *United States v. Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022). Additionally, "when police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo'" during the course of the stop. *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)); *Commonwealth v. Reed*, 352 A.3d 983 (Pa. Super. Ct. 2025) ("[T]o ensure officers' safety during a traffic stop, police may order both drivers and passengers to exit the vehicle, even without reasonable suspicion that criminal activity is afoot."). This can include using handcuffs if justified by the circumstances confronting the officer. *See United States v. Jackson*, 120 F.4th 1210, 1220 (3d Cir. 2024); *United States v. Johnson*, 592 F.3d 442, 448 (3d Cir. 2010); *Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir. 1995).

Gayle alleges that Officer Kinnel pulled over the vehicle in which he was riding as a passenger because of "an invalid plate on the vehicle." (SAC at 1, 5-6.) As noted, an officer's observation of a violation of the vehicle code justifies a stop of the offending vehicle.[7] Further, while investigating, officers may generally direct the occupants of the vehicle out of the car and search them for their own safety. *See United States v. Hackett*, 173 F. App'x 164, 165 (3d Cir. 2006) (observing that where officers established an expired registration plate that had been issued for another car, they "could investigate further, [and] they were also justified in ordering Hackett out of the car for their own protection during the brief detention required for that investigation."). An officer is further permitted to impound a car that is not lawfully on the road

---

[7] Nothing in the SAC suggests that Officer Kinnel's assessment of the Motor Vehicle Code violation was incorrect or unreasonable. *See generally* 75 Pa. Cons. Stat. Ann §§ 1332, 1334.1, 6308.

and may conduct an inventory search when doing so.  *See* 75 Pa. Cons. Stat. Ann. § 6309.2 (providing that a law enforcement officer who determines that a vehicle is not properly registered "shall immobilize the vehicle or . . . in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent"); *Commonwealth v. Felder*, 311 A.3d 603 (Pa. Super. Ct. 2023) ("An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle."); *United States v. Gilbert-Brown*, No. 21-1316, 2022 WL 72729, at *4 (3d Cir. Jan. 7, 2022) ("The Supreme Court has recognized an exception to the Fourth Amendment's warrant requirement when there are 'reasonable police regulations relating to inventory procedures administered in good faith[.]'" (quoting *Colorado v. Bertine*, 479 U.S. 367, 374 (1987)).

Gayle describes events consistent with these legal principles.  In other words, he describes a situation in which the Defendant Officers lawfully pulled over the vehicle in which Gayle was a passenger because of an invalid plate, directed Gayle out of the car and frisked him while investigating the violation of the vehicle code, impounded and towed the offending vehicle, and conducted an inventory search in the process.  Further, Gayle implies that he was subsequently charged with criminal violations—although he does not say what for or what these charges were allegedly based upon—as a result of either what occurred during his interactions with Officers that day or based on what the Officers recovered from their searches.  By leaving this information out of his SAC, Gayle has obscured the Court's ability to assess his claims.  If circumstances existed that rendered the Officers' actions unreasonable based on the events they

11

confronted on April 12, 2024, those circumstances are simply not pled in the SAC.[8]  *See*

*generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with

a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief." (internal quotation marks omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007) ("Because the plaintiffs here have not nudged their claims across the line from

conceivable to plausible, their complaint must be dismissed.").  Accordingly, Gayle has not pled

a plausible constitutional violation based on the events of April 12, 2024.

### 2.  Chief Scalzo's Statements

It appears Gayle is suing Chief Scalzo for answering "not yet," when Gayle called to

inquire whether there were any active warrants for him.  (SAC at 4.)  This does not give rise to a

constitutional violation or any other discernable claim.  *See, e.g.*, *S.M. v. Lakeland Sch. Dist.*,

148 F. Supp. 2d 542, 551 (M.D. Pa. 2001) (explaining that words, even offensive ones, do not

generally violate the constitution), *aff'd*, 33 F. App'x 635 (3d Cir. 2002); *see also Mugavero v.*

*Town of Kearny*, No. 12-2439, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) (holding that

officer's verbal slurs and offensive drawings did not violate the constitution).  Further, to the

---

[8] To the extent Gayle is raising a procedural due process claim based on the towing of his company vehicle or the Officers' failure to return his or his company's property, he does not allege that he utilized any procedures available to his to retrieve his property or explain why Pennsylvania's post-deprivation procedures are insufficient to provide any process due.  *See Mancini v. Northampton County*, 836 F.3d 308, 315 (3d Cir. 2016) ("Fundamentally, procedural due process requires notice and an opportunity to be heard" in a meaningful time and manner (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976))); *Mawson v. Pittston City Police Dep't*, No. 16-00400, 2017 WL 4324840, at *15 (M.D. Pa. Jan. 20, 2017) (concluding, in the towing context, that "[c]ourts have recognized that a state-law conversion or replevin case provides an adequate post-deprivation remedy in situations of seized property"), *report and recommendation adopted*, No. 16-0400, 2017 WL 4366446 (M.D. Pa. Sept. 28, 2017); *see generally Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71 (2009) ("It is difficult to criticize the State's procedures when Osborne has not invoked them.").

extent Gayle sued Chief Scalzo based on other incidents alleged in the SAC, nothing suggests that the Chief was personally involved in those incidents or that, as a supervisor, he knew of and acquiesced in a constitutional violation or promulgated an unconstitutional policy or custom. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017) ("[S]upervisors are liable only for their own acts; in this case, they are liable only if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." (cleaned up)).  For these reasons, Gayle has not pled a claim against Chief Scalzo.

### 3. Prosecution

Gayle also alleges that he was maliciously prosecuted when Officer Kinnel filed a fabricated affidavit of probable cause in support of criminal charges based on Officer Campbell's "statements."[9]  (*See* SAC at 8, 29, 75.)  To state a Fourth Amendment malicious prosecution

---

[9] "As the Supreme Court has explained, claims for false arrest challenge 'detention without legal process,' while malicious prosecution involves seizure 'pursuant to legal process.'" *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024) (first quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007); then quoting *Thompson v. Clark*, 596 U.S. 36, 42 (2022)).  "If the plaintiff is held pursuant to legal process, then his proper claim is a malicious prosecution claim, which is a claim involving the 'wrongful institution of legal process' (not the absence of legal process)." *Voorhis v. Ginkel*, No. 24-2859, 2025 WL 2556241, at *2 (3d Cir. Sept. 5, 2025) (*per curiam*) (quoting *Wallace*, 549 U.S. at 390).  Gayle indicates that the Officers filed charges against him that were approved by a Magisterial District Judge, who also issued a warrant for his arrest.  These allegations sound in malicious prosecution and will be analyzed accordingly.  *Noviho v. Lancaster County*, 683 F. App'x 160, 166 (3d Cir. 2017) (*per curiam*) ("Arrests made pursuant to a 'validly issued—if not validly supported—arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)).

claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) (citing *Thompson*, 596 U. S. at 43, and n.2). A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (internal quotation marks and citation omitted). "Probable cause exists if there is a fair probability that the person committed the crime at issue." *Id.* at 199 (quotations omitted).[10] A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49. Similarly, a plaintiff pursuing a malicious prosecution claim under Pennsylvania law must allege that the defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. 1988).

---

[10] For the "lack of probable cause" element, where an arrest is made pursuant to a warrant or a previously sworn criminal complaint, a plaintiff must allege plausibly "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quotation marks and citation omitted); *Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 748 (3d Cir. 2024) (same); *see also Evans v. Newark City*, 152 F.4th 537, 545-47 (3d Cir. 2025) (discussing "lack of probable cause" element). An omission is made with reckless disregard if it were something a reasonable person would realize that the judge would want to know. *Wilson*, 212 F.3d at 788. To determine whether an omission is material, the Court must predict whether a reasonable judge would conclude that a corrected affidavit was insufficient to establish probable cause. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997); *Pinkney*, 95 F.4th at 748-49.

Gayle does not allege sufficient facts that would permit the Court to draw the reasonable inference that either Officer Kinnel or Officer Campbell engaged in malicious prosecution.  Even under a liberal construction of the Amended Complaint, Gayle has failed to meet the plausibility standard since he does not identify the crimes he was charged with committing nor explain why it would have been unreasonable for officers to charge him with those crimes.  For example, Gayle does not allege what facts were known to the officers, what (if any) information was known but not included in the affidavit of probable cause that would lead a reasonable person to think he did not commit the crimes charged, or provide any context for why it was unreasonable to pursue the criminal charges against him.  Rather, he alludes to unspecified "statements" and characterizes the arrest warrant using conclusory terms such as "frivolous" and "fabricated." (SAC at 8, 29, 75.)  Accordingly, Gayle's malicious prosecution claims must be dismissed because they are not plausible as pled.[11]  *See, e.g., Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting a malicious prosecution claim, plaintiff "needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing, *inter alia*, malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all allegations against them in the underlying criminal proceedings were false).

---

[11] It appears that the charges terminated in Gayle's favor, given his allegation that he was "victorious" at trial, (SAC at 46), but it is not entirely clear.

###### D.    Claims Against the City of Easton and Easton Police Department

A municipality or any other suable municipal entity, is not vicariously liable under §
1983 for the acts of its employees, meaning a municipality is not liable simply because its
employee commits a constitutional violation.[12]  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,
691 (1978); *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (stating "local governments are
responsible only for 'their *own* illegal acts'" (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479
(1986)).  There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff
may put forth that an unconstitutional policy or custom of the municipality led to his or her
injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a
deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal
quotation marks and citations omitted).  "Policy is made when a decisionmaker possess[ing] final
authority to establish municipal policy with respect to the action issues an official proclamation,
policy, or edict."  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting
*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "Custom, on the other
hand, can be proven by showing that a given course of conduct, although not specifically
endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."
*Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  "A plaintiff must also
allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v.
Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative

---

[12] Police departments are generally considered subdivisions of an entity that are not
suable under § 1983 apart from the entity itself.  *Martin v. Red Lion Police Dep't*, 146 F. App'x
558, 562 n.3 (3d Cir. 2005) (*per curiam*) ("[T]he Red Lion Police Department, as the sub-
division of defendant Red Lion Borough through which the Red Lion Borough fulfills its
policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983.").  This
means the Easton Police Department is not a suable entity separate from the City of Easton.

16

link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (citation omitted). A plaintiff whose claim is predicated on a failure or inadequacy must allege a failure that amounts to deliberate indifference on the part of the municipality. *Forrest*, 930 F.3d at 106 (citation omitted). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

Nonetheless, if a plaintiff has not plausibly alleged an underlying constitutional injury, the plaintiff cannot proceed on a municipal liability claim. "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citations omitted). Because Gayle failed to allege a plausible basis for any underlying constitutional claim, as discussed above, there can be no derivative municipal claim. But even if Gayle had plausibly pled an underlying constitutional violation, he failed to allege any facts that support municipal liability. Rather, he simply parrots legal language for municipal liability without identifying a specific policy or custom, or presenting facts supporting a "failure to" claim. *See Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under *Monell*."), *aff'd*, 756 F. App'x 165 (3d Cir. 2018). Further, to the extent he attempts to bring claims against the City of Easton based on matters pertaining to his criminal proceeding in the Northampton County Court of Common Pleas, the court is an agency of the Commonwealth, *see Benn*, 426 F.3d at 235 n.1 & 241, so the City of Easton is not responsible for how the court is managed, *see,*

17

*e.g.*, *Scheib v. Pennsylvania*, 612 F. App'x 56, 59 (3d Cir. 2015) (*per curiam*) ("It appears that [plaintiff] named the County as a defendant because she mistakenly believes that the Allegheny County Court of Common Pleas is a County entity.  As the District Court correctly noted, however, the court is a Commonwealth—not County—entity. . . .  Therefore, [plaintiff's] claims against the Court of Common Pleas are . . . barred by the Eleventh Amendment.").  Accordingly, the claims against the City of Easton and its police department will be dismissed.

### E.  Claims Against the District Attorneys and the District Attorney's Office

Gayle claims that the Northampton County District Attorney's Office, Deputy DA William Blake, and District Attorney Stephen Baratta violated his rights by pursuing "meritless, frivolous, falsified charges against [him]." (*See, e.g.*, SAC at 45, 64-65, 121.)  It is well settled that prosecutors are entitled to absolute immunity from liability for damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024).  "[W]hether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. County of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006). Absolute immunity extends to the decision to initiate a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," presenting a state's case at trial, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (cleaned up); *see also Sanders v. City of Erie*, No. 26-1135, 2026 WL 1428876, at *2 (3d Cir. May 21, 2026) (*per curiam*) ("[A] district attorney acting 'within the scope of his duties in initiating and pursuing a criminal prosecution' is immune from suit, even

when a litigant alleges a lack of probable cause." (quoting *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997))). District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in initiating and pursuing a prosecution on behalf of the Commonwealth, and in seeking an arrest warrant. *See Imbler*, 424 U.S. at 430-31; *Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). Similarly, in Pennsylvania, common law tort immunity protects "high public officials," including district attorneys and assistant district attorneys, from suit when acting in the scope of their official duties and authority, such as pursuing a prosecution. *Poteat v. Lydon*, 2023 WL 6620368, at *3 (3d Cir. 2023) (*per curiam*) (citing *Heller v. Fulare*, 454 F.3d 174, 177 (3d Cir. 2006); then citing *Durham v. McElynn*, 772 A.2d 68, 69-70 (Pa. 2001)); *see also Harris v. Krasner*, No. 23-2068, 2024 WL 2861848, at *4 (3d Cir. June 6, 2024).

Defendants Blake and Baratta are clearly subject to immunity from Gayle's claims, which are based on their prosecution of the criminal case against him. Accordingly, these claims will be dismissed as legally baseless. To the extent the local District Attorney's Office is an entity capable of suit under § 1983, *compare Reitz v. County of Bucks,* 125 F.3d 139, 142 (3d Cir. 1997) *with Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711-12 (E.D. Pa. 2015), Gayle has not stated a *Monell* claim against the office because, as discussed above, he has neither alleged a specific policy or custom that caused the alleged violations of his rights, nor stated a malicious prosecution claim.

### F. Claim Against Greene

Gayle alleges that Greene, the director of the state court's administration, violated his rights by redacting "critical case information" from Gayle's criminal docket, which allegedly assisted his "malicious prosecution." (SAC at 54.) Specifically, he claims that for a period of

approximately four months, the appearances of attorneys whom Gayle hired to represent him were not viewable on the docket. (*Id.* at 69-71, 88.)  As noted above, Gayle has not alleged a malicious prosecution claim, and nothing alleged in the SAC provides a basis for inferring that any allegedly incorrect information on the docket deprived Gayle of a constitutional right.  Accordingly, the Court will dismiss the claims against Greene.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Gayle's SAC pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  Gayle's claims against the Court of Common Pleas, Court Administration, Judge Koury, President Judge Dally, Judge Kassis, Judge Yetter, Blake, Baratta, the District Attorney's Office, the Easton Police Department, and Greene will be dismissed with prejudice because the Court concludes that Gayle cannot amend the defects in these claims.  However, he will be given leave to file an amended complaint as to his claims against Officers Kinnel, Rivera, McNally, and Campbell, Chief Scalzo, and the City of Easton based on the events of April 12, 2024 and his subsequent prosecution.

An appropriate Order follows, which provides further information about amendment.

**BY THE COURT:**

*/s/ Jeffrey L. Schmehl*
**JEFFREY L. SCHMEHL, J.**